609 So.2d 1125 (1992)
STATE of Louisiana, Appellee,
v.
Douglas LOWERY, Appellant.
No. 24191-KA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1992.
Rehearing Denied January 14, 1993.
*1127 Steven A. Hansen, Monroe, for appellant.
Richard Ieyoub, Atty. Gen., Jerry L. Jones, Dist. Atty., Marcus R. Clark, Asst. Dist. Atty., for appellee.
Before MARVIN, SEXTON and NORRIS, JJ.
SEXTON, Judge.
The defendant, Douglas Lowery, was charged by bill of information with one count of possession of marijuana with the intent to distribute, a violation of LSA-R.S. 40:966(A)(1), and one count of conspiracy to distribute marijuana, a violation of LSA-R.S. 40:979 and LSA-R.S. 40:966. After a trial by jury, the defendant was convicted as charged on both counts. On the possession with intent to distribute conviction, the defendant was sentenced to 28 years at hard labor and a $5,000 fine, or in default of the fine, to serve one additional year imprisonment. On the conspiracy to distribute marijuana conviction, the defendant was sentenced to ten years at hard labor, to run concurrently with the previous sentence. Defendant now appeals his convictions and sentences asserting four assignments of error. We affirm the defendant's conviction and sentence for possession with intent to distribute and reverse his conspiracy conviction.

FACTS
On January 16, 1991, Louisiana State Trooper Jackie Coleman observed a 1987 GMC pickup truck, driven by the defendant, Douglas Lowery, speeding on I-20 in Monroe, Louisiana. Officer Coleman gave pursuit and stopped the vehicle for speeding. As he walked beside the vehicle, Officer *1128 Coleman detected a strong odor of marijuana coming from the rear of the truck.
Officer Coleman asked the defendant, who appeared extremely nervous, for his license and registration papers. Defendant was able to produce his North Carolina driver's license, but he was unable to produce the registration papers. Officer Coleman called in the defendant's name for a computer check, which revealed that he had several prior drug-related convictions. The defendant then found the registration papers to the vehicle which showed the truck was registered to Jonathan Barfoot. The defendant claimed that Mr. Barfoot was his nephew. The officer became more suspicious when the defendant could not remember the name of the town that he was coming from. Officer Coleman then wrote the defendant a citation for speeding and asked him to consent to a search of the truck.
The defendant agreed to the search and signed a consent to search form. Officer Coleman then called for a backup, and when Officer Gary Beasley arrived, the search began. In the cab of the truck, Officer Coleman found two motel keys and receipts to two motels in Maryland. The officer also found a partially smoked marijuana cigarette in the ashtray. In the camper, Officer Coleman found 23 bundles of marijuana, which were packaged in garbage bags and cellophane. Also found in the rear of the truck was an empty briefcase with broken locks. The defendant was immediately placed under arrest and a search of his person revealed $562 in cash.
Narcotics officer George Johnston was then called to the scene. The marijuana in the truck was then transported back to state police headquarters. The marijuana was tagged and its total weight was determined to be 271 pounds. Officer Johnston then interviewed the defendant, who admitted the marijuana belonged to him. When asked if there were other people involved, the defendant stated: "You have me. I'll do the time. I'm not going to help you get the other people involved in this."

TESTIMONY OF THE OFFICERS
On appeal, defendant contends the trial court erred in allowing state police officers to testify as to other cases in which they participated relative to narcotics pricing, trafficking, and packaging. Defendant contends that the testimony of the officers is irrelevant and should not have been allowed into evidence. Defendant asserts that the testimony concerning previous narcotics cases unfairly tainted the jury to the evidence at hand, which lead to him being improperly convicted.
In the instant case, the only police officer who testified to other drug-related cases in which he was involved was Officer Johnston. Officer Johnston testified about his work as a undercover agent, the value of marijuana in Louisiana and other states, the estimated street value of the marijuana in question, his narcotics investigations in other states, and the difference between homegrown marijuana and that grown in other states.
Defense counsel objected to the foregoing testimony based upon the lack of foundation and relevancy. The trial court overruled the objection.
LSA-C.E. Art. 701 provides:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
A law officer may testify as to matters within his personal knowledge acquired through experience without first being qualified as an expert. State v. Digilormo, 505 So.2d 1154 (La.App. 3d Cir. 1987), writ denied, 511 So.2d 1153 (La. 1987).
A review of the record indicates that all of Officer Johnston's testimony concerning his prior narcotics cases was based on personal knowledge he had acquired from his 11 years as a law enforcement officer. Furthermore, the testimony *1129 of Officer Johnston concerning the packaging of marijuana and the street value in dosage units of the narcotic drug was relevant to the issue of intent to distribute the marijuana. State v. Green, 508 So.2d 602 (La.App. 2d Cir.1987); State v. Winzer, 545 So.2d 1259 (La.App. 2d Cir.1989). Testimony that the instant marijuana was not homegrown may be irrelevant, but it is not prejudicial to the defendant. State v. Mims, 524 So.2d 526 (La.App. 2d Cir.1988), writ denied, 531 So.2d 267 (La.1988); appeal after remand, 550 So.2d 760 (La.App. 2d Cir.1989), 566 So.2d 661 (La.App. 2d Cir.1990), writ denied, 569 So.2d 970 (La. 1990). This assignment of error has no merit.

SUFFICIENCY OF THE EVIDENCE
Defendant also contends that there was insufficient evidence to support either of his convictions. As to his conspiracy conviction, defendant contends there is a lack of evidence of another person's involvement, therefore, there could be no conspiracy. Defendant also asserts that there was insufficient evidence to support the conviction for possession with intent to distribute because it was based on a theory of what the police officers thought he would do with the "moderate" amount of marijuana found in his possession. Defendant contends that no proof of his specific intent to distribute the marijuana was offered into evidence. Accordingly, defendant contends that both of his convictions should be reversed.
The standard of review for sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the state proved the elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984); State v. Hobbs, 494 So.2d 1246 (La.App. 2d Cir. 1986). Furthermore, LSA-R.S. 15:438 provides that when circumstantial evidence is used to convict, every reasonable hypothesis of innocence must be excluded. This statutory rule is not a separate test from the Jackson standard and does not establish a stricter standard of review in circumstantial evidence cases. Therefore, all of the evidence, both direct and circumstantial, must be sufficient under the Jackson standard to satisfy a rational juror that a defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985).
We first consider defendant's complaints about his conviction for conspiracy to distribute marijuana. Criminal conspiracy is defined in LSA-R.S. 14:26A as follows:
A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing a crime; provided that an agreement or combination to commit a crime shall not amount to criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
In a conspiracy, it is the combination of at least two minds for an unlawful purpose which is the foundation of the offense. Conspiracy imports a corrupt agreement between not less than two people with guilty knowledge on the part of each. The clear purpose of LSA-R.S. 14:26 is to criminalize the conduct of two or more persons who intend a criminal act and as a result of that intentionmanifested as an agreement or combinationone of these does something in furtherance of the intended criminal act. State v. Joles, 485 So.2d 212 (La.App. 2d Cir.1986).
The state's burden in proving the defendant committed conspiracy to distribute marijuana is to show that an agreement or combination of two or more persons existed for the specific purpose of distributing marijuana and that one or more parties to the agreement did an act in furtherance of the agreement's object. State v. Perez, 569 So.2d 609 (La.App. 2d Cir.1990), writ denied, 575 So.2d 365 (La. 1991). The elements of conspiracy may be proven by direct or circumstantial evidence. State v. Perez, supra.
*1130 In the instant case, the defendant was caught with 271 pounds of marijuana in the truck and $562 on his person. An empty briefcase, two motel keys, and two motel receipts were also found in the truck. Defendant also gave the previously noted statement to Officer Johnston to the effect that he would not help the police get the other people involved.[1] The state argues that the above evidence, along with the fact that the defendant was traveling from Texas to North Carolina, is sufficient to sustain the defendant's conspiracy conviction.
We disagree. We conclude that under the standards of Jackson v. Virginia, supra, the evidence is insufficient to prove beyond a reasonable doubt that the defendant was engaged in a conspiracy to distribute marijuana.
The evidence reflects that the defendant had a relatively large amount of marijuana and that he had stayed in two motels in the process of traveling across Louisiana from North Carolina to Texas. The only evidence remotely suggesting the involvement of others was the statement by the defendant to Officer Johnston. Presumably, the relatively large amount of marijuana was obtained from an unknown person. Presumably the defendant also intended to transfer it to one or more unknown persons. However, any such party or parties are only speculative.[2]
It is essential to a conspiracy that there be a joining of the minds to accomplish a concerted action which has an unlawful purpose. See State v. D'Ingianni, 217 La. 945, 47 So.2d 731 (1950). Criminal intent to commit a specific offense must exist in at least two minds. State v. Joles, supra. The fact that this defendant apparently obtained this marijuana from someone else who knew, because of the nature of the business of distributing marijuana, that the defendant was likely to transfer it to one or more other persons unknown to the person from whom the defendant obtained the marijuana is all that can be determined from the instant evidence. This is not a combination of minds to accomplish a concerted unlawful purpose sufficient to establish the offense of conspiracy to distribute marijuana.
In other words, the fact that the person from whom the defendant obtained the marijuana may have presumed that the defendant intended to distribute it to others does not amount to a conspiracy to distribute marijuana between the two. There must be sufficient evidence that the defendant's supplier specifically intended for the defendant to do certain and specific acts with the marijuana as part of a joint enterprise. The instant evidence does not rise to this level. Accordingly, the defendant's conviction for the offense of conspiracy to distribute marijuana is reversed and set aside.
As to defendant's conviction for possession with intent to distribute marijuana, the test for determining whether intent to distribute exists in a particular case includes five factors which should be considered in evaluating the existence of intent to distribute: (1) packaging in a form usually associated with the distribution; (2) evidence of other sales or attempted sales by the defendant; (3) a large amount or quantity of substance such as to create a presumption of intent to distribute; (4) an amount inconsistent with personal use; and (5) the existence of any paraphernalia. State v. House, 325 So.2d 222 (La.1975); State v. Winzer, supra. The intent to distribute may be inferred from the surrounding circumstances. The trier of fact may look to how the substance was packaged, the quantity of the substance seized, and the presence of scales or other paraphernalia for drug use or packaging. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Winzer, supra. Testimony of street value and dosage units of the narcotic is also relevant to the issue of *1131 intent. State v. Tornabene, 337 So.2d 214 (La.1976).
In this case, Officer Johnston testified that the defendant readily admitted that the marijuana belonged to him. Officer Evans also testified that the defendant admitted ownership of the marijuana. There is no doubt that the defendant had possession of the 271 pounds of marijuana which was found in the back of the truck that he was driving.
Officer Johnston testified that the marijuana was packaged in two ways. Eighteen bundles of marijuana were compressed and wrapped with clear cellophane, while there were also five garbage bags filled with marijuana. Officer Coleman testified that the packaging of the marijuana was consistent with drug trafficking. Two hundred seventy-one pounds of marijuana is a large amount which creates a presumption of intent to distribute. This large amount of marijuana is also inconsistent with personal use. The arresting officers also found $562 in cash on the defendant's person.
It is clear the defendant had the subjective intent to distribute the marijuana. Considering all the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the state proved the elements of possession with intent to distribute beyond a reasonable doubt. This conviction is affirmed.

EXCESSIVE SENTENCE
In his last assignment of error, the defendant contends the trial court erred by imposing excessive sentences. The defendant contends there has been no evidence introduced that would indicate that he is the worst kind of offender and that improper weight was given to prior convictions in the determination of his sentences. Since defendant's conspiracy conviction has been vacated, we will only address these arguments with respect to defendant's sentence for possession with intent to distribute.
LSA-R.S. 40:966(B)(2) provides that a conviction for possession of marijuana with intent to distribute carries a sentence of 5 to 30 years at hard labor and a potential fine of $15,000. In the instant case, the defendant was sentenced to 28 years at hard labor and a $5,000 fine or, in default of the fine, to serve one additional year imprisonment for his possession with intent to distribute conviction.[3]
The Felony Sentencing Guidelines, which became effective on January 1, 1992, and are a part of the Louisiana Administrative Code, are applicable in the instant case since the defendant was sentenced on January 8, 1992.[4] In determining the appropriate grid cell under which the defendant should have been sentenced under the Felony Sentencing Guidelines, we note that possession with intent to distribute marijuana is a Level 5 offense.[5]
Defendant's criminal history index can be computed from the presentence investigation report which shows that the defendant had separate convictions in 1973 for possession of marijuana with the intent to distribute and maintaining a dwelling in which marijuana was used. Defendant also had 1981 convictions for theft of a tractor and manufacturing marijuana. When the point values of these crimes are reduced by the crime-free time factor, we note that defendant has a Class B criminal *1132 history index.[6] Accordingly, the defendant should have been sentenced under Grid Cell 5B of the Felony Sentencing Guidelines, which establishes the maximum sentence as 66 months (five and one-half years).[7]
The trial court's sentence obviously exceeds the designated sentencing range under the Felony Sentencing Guidelines. However, § 209(A) of the Felony Sentencing Guidelines allows for departures from the designated sentencing range and provides, in pertinent part:
A. Procedures for Departure
....
3. The court should depart from the designated sentence range when sufficient aggravating or mitigating circumstances are present significantly to differentiate the case from the typical case arising under the offense of conviction.
4. When departing from the designated sentence range, the court shall:
a. pronounce a sentence which is proportional to the seriousness of the offense and the offender's criminal history; and
b. state for the record the reasons for the departure which shall specify the mitigating or aggravating circumstances, and the factual basis therefor.
5. Reasons for departure from the designated sentence range are appropriate only when such reasons are based on mitigating or aggravating circumstances.
Section 209(B) then lists aggravating circumstances which allow departure from the designated sentencing range.
The trial court stated that the nature of the defendant's crime and the record of his criminal history are so severe and aggravating, that they support the imposition of the near maximum sentence. The court noted that the marijuana in this case posed a great risk to untold numbers of unknown victims and stated that the defendant should have known better than to have been involved in drugs based on his prior incarceration and parole. Finally, the court noted that the defendant's own greed for money was a factor in his conviction for possession with intent to distribute. Thus, since this was defendant's third felony conviction for this same type of offense, along with the large amount of marijuana found in his possession, the trial court departed from the designated sentencing range and sentenced the defendant to 28 years of incarceration.
Some of the reasons given by the trial judge for his upward departure are not aggravating circumstances under the guidelines. The nature of possessing drugs, the defendant's criminal history, that drugs pose a great risk to many victims, and that the defendant should have known better are factors that have already been weighed under the guidelines in ranking the seriousness of crimes, establishing the criminal history classes of offenders, and in setting the penalty ranges on the guidelines grid. They are not proper aggravating circumstances for a departure from the designated grid range because they are factors present in a typical case. Felony Sentencing Guidelines § 103.
*1133 However, the trial court was obviously influenced, as are we, by the fact that this is the third major controlled dangerous substance offense in which the defendant had been involved. The defendant has continued his involvement in major drug offenses over a period of two full decades. He obviously has not been deterred by his previous contacts with the legal system, as evidenced by his continuing propensity to be involved in large-scale schemes for the distribution of controlled dangerous substances. We therefore agree that this is not a typical possession with intent to distribute case, and an upward departure was justified because two aggravating circumstances, § 209(B)(15) and (19), are present which make the case atypical:
15. The offense was a controlled dangerous substance offense and the offender obtained substantial income or resources from ongoing drug activities.
....
19. Any other relevant aggravating circumstances which distinguish the case from the typical cases of the offense of conviction.
Felony Sentencing Guidelines § 209(B)(15) is designed to allow an upward departure for a large scale drug offender who receives substantial profit from drug activities that are ongoing, as is the obvious circumstance in the instant case. Felony Sentencing Guidelines § 209(B)(19), the catch-all provision for aggravating circumstances, is pertinent because of our view that the sentencing guidelines do not contemplate that transporting 271 pounds of marijuana across state lines is a typical case of possession with intent to distribute.
Once an aggravating factor is found to be present to a significant degree justifying an upward departure, the guidelines do not specify the sentence to be imposed, but state the judge shall "... pronounce a sentence which is proportional to the seriousness of the offense and the offender's criminal history."[8] Felony Sentencing Guidelines § 209(A)(4)(a). Said another way, if a departure from the guidelines is justified, the judge is free to pronounce a sentence commensurate to the circumstances of the case without consideration of the proportionality of the sentence to the guidelines.
While the court is mandated to consider the sentencing guidelines in determining the appropriate sentence to be imposed after conviction of a felony, LSA-C.Cr.P. Art. 894.1(A), and is directed to state for the record the considerations taken into account, including aggravating and mitigating circumstances, LSA-C.Cr.P. Art. 894.1(C), the guidelines are not mandatory and are only advisory. LSA-R.S. 15:321(B); 15:326(A); Felony Sentencing Guidelines § 103(J). No sentence can be declared unlawful, inadequate, or excessive by an appellate court solely due to the failure of the judge to impose a sentence in conformity with the sentencing guidelines. LSA-C.Cr.P. Art. 894.1(A); LSA-R.S. 15:328(B); Felony Sentencing Guidelines § 103(J).
Here, the trial court, for the reasons it expressed, imposed a 28-year sentence at hard labor. In reviewing this sentence for excessiveness under the Louisiana Constitution, we conclude the sentence imposed is not grossly disproportional to the crime in light of the harm done to society, and our sense of justice is not shocked. State v. Richardson, 545 So.2d 714 (La.App. 2d Cir. 1989). The defendant has not demonstrated a manifest abuse of the wide discretion afforded the trial court in the sentence imposed. State v. Square, 433 So.2d 104 (La.1983); State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988). The sentence imposed is affirmed.
CONVICTION AND SENTENCE FOR CONSPIRACY TO DISTRIBUTE MARIJUANA REVERSED; DEFENDANT ORDERED DISCHARGED. CONVICTION AND SENTENCE FOR POSSESSION OF MARIJUANA WITH INTENT TO DISTRIBUTE AFFIRMED.

*1134 APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, LINDSAY and STEWART, JJ.
Rehearing denied.
NOTES
[1] The defendant also contends that this statement was erroneously admitted. Obviously, the statement is admissible as a personal admission under LSA-C.E. Art. 801D(2)(a).
[2] There is jurisprudence that a defendant cannot be made aware of the criminal conspiracy of which he has been accused until he has been informed with whom he supposedly conspired. State v. Rogers, 375 So.2d 1304 (La.1979).
[3] The law does not prohibit suspension of this sentence. Had the defendant been charged under LSA-R.S. 40:966(E)(1) with possession of the specific amount of marijuana he had in his possession, i.e., between 60 and 2000 pounds, he would have been subjected to a sentence of 5 to 15 years and a fine of $25,000 to $50,000. That sentence could not have been suspended and parole would have been unavailable prior to serving the minimum sentence of 5 years. LSA-R.S. 40:966(F). Possession of this specific amount of marijuana is a Grid Level 4 offense. Felony Sentencing Guidelines § 401(A).
[4] The defendant was not required to file a motion to reconsider his sentence under LSA-C.Cr.P. Art. 881.1 since this article was not effective until January 31, 1992.
[5] The May 1992 revisions to the Felony Sentencing Guidelines changed possession of marijuana with intent to distribute to a Level 4 offense.
[6] The crime-free time reduction factor was eliminated by the May 1992 revisions to the Felony Sentencing Guidelines.
[7] The presentence investigation report in this case indicates that the defendant has four prior convictions. In 1973, defendant was convicted of possession of marijuana with intent to distribute and maintaining a dwelling for the use of marijuana. The Felony Sentencing Guidelines establish these crimes as Level 5 offenses worth 2 points apiece. Since these crimes are similar prior criminal behavior, .5 point is added to the total of each crime. When the total points of these crimes are reduced by the crime free time factor, defendant's 1973 convictions add up to a total of 2.5 points.

In 1981, the defendant was convicted of theft of a tractor and the manufacture of marijuana. These crimes are a Level 5 and a Level 4 offense, respectively, and therefore worth 2 points apiece. The manufacture of marijuana conviction is similar prior criminal behavior, therefore.5 point is added. When the total of these points is reduced by the crime-free time factor, defendant's 1981 convictions add up to a total of 2.25 points. Therefore, defendant's total point value for his prior convictions is 4.75 points. Under the felony sentencing guidelines, defendant is therefore classified as a 5B offender.
[8] See generally the discussion pertinent thereto by another panel of this court in State v. Strother, 606 So.2d 891 (La.App. 2d Cir.1992).